IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES M. SCURLOCK                                                      PLAINTIFF

v.                                    CASE NO. 4:11-CV-0369 BSM

WINDSTREAM COMMUNICATIONS, INC.;                          DEFENDANTS
GEORGE EASLEY; BRENT
WHITTINGTON; TOM KEMPER; DON
WILBORNE; LORI YACAVONE; AND JEFF
GARDNER

---

BRIEF IN SUPPORT OF SEPARATE DEFENDANTS
BRENT WHITTINGTON, JEFF GARDNER, AND DON WILBORNE'S
MOTION FOR SUMMARY JUDGMENT

---

## I.   INTRODUCTION.

Plaintiff James M. Scurlock claims he was discriminated against at Windstream Communications, Inc. (hereinafter "Windstream") based on his Jewish ancestry and an unspecified medical disability. Plaintiff asserts claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102, *et seq.* and the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-107. His claims against the individual Defendants George Easley, Brent Whittington, Tom Kemper, Don Wilborne, Lori Yacavone, and Jeff Gardner are limited to claims of harassment, intimidation, and retaliation under the ACRA.

Plaintiff's claims against Defendants COO Whittington, CEO Gardner, and former Senior Vice President of Sales Wilborne fail as a matter of law. Individuals can only be liable for retaliation, not discrimination, under the ACRA. *Calaway v. Practice Mgmt. Servs.*, 2010 Ark. 432, at 3-4. Plaintiff claims he was retaliated against by being terminated on November 18, 2009. He alleges Whittington and Gardner, among others, directed Yacavone and Kemper to terminate his employment. *See* Amended Complaint, Doc. 10, at ¶ 40. The undisputed facts show,

1562702.1

however, that Whittington and Gardner had nothing to do with Plaintiff's termination. Further, Wilborne was not employed by Windstream at the time Plaintiff was laid off. Accordingly, he also had no part in Plaintiff's termination. Summary judgment should, therefore, be granted on behalf of Defendants Whittington, Gardner, and Wilborne.

## II.    ARGUMENT AND AUTHORITY.

### A.    Summary Judgment Standard.

"A party may move for summary judgment, identifying each claim of defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The United States Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Eighth Circuit Court of Appeals set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted; brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### B.   Plaintiff's Claims Against Whittington, Gardner, and Wilborne Fail as a Matter of Law.

Plaintiff makes clear in his Amended Complaint that he is attempting to assert only a retaliation claim against the individual Defendants. *See* Amended Complaint, Doc. 10, Count III. A recent decision of the Arkansas Supreme Court opened the door to suits against individuals for employment retaliation and undersigned predicted this would become a favored tactic in employment cases. Nonetheless, the requirements for establishing a prima facie case of retaliation necessitate more than setting one's sights on every executive in the C suite.

The Arkansas Supreme Court, in *Calaway*, found a distinction between who is subject to liability for employment discrimination and who is subject to liability for retaliation under the ACRA. 2010 Ark. 432, at 3. In *Calaway*, the Plaintiff brought a claim under the ACRA against her supervisor, claiming that the supervisor personally terminated her following a sexual harassment complaint. *Id.* at 2. The Court noted that the ACRA prohibits discriminatory acts by *employers*, but prohibits retaliation by all *persons*. *Id.*; Ark. Code Ann. §§ 16-123-107(c)(1)(A), 16-123-108(a). The court in *Calaway* held, therefore, that the anti-retaliation provision of the ACRA prohibits discrimination by a human being or an entity. *Id.* at 4. Accordingly, "an individual supervisor can be held personally liable for alleged acts of retaliation prohibited under [the ACRA]." *Id.*

In the present case, COO Whittington and CEO Gardner cannot be held liable for retaliation, because they played no part in Plaintiff's layoff from Windstream. During his

employment with Windstream, Plaintiff worked as a salesperson in the National Accounts Division. *See* Amended Complaint, Doc. 10, ¶ 16. On or around July 10, 2009, Windstream made the decision that the continuation of the National Accounts Division was not in its best interest. *See* Affidavit of Brent Whittington, attached to Motion as Exhibit A, ¶ 3. Whittington, however, provided no direction on the placement of Plaintiff. *See* Whittington Affidavit, ¶ 4; *see also* Affidavit of Lori Yacavone, attached to Motion as Exhibit B, ¶¶ 7-8. He did not lay off, transfer, promote, or demote Plaintiff, nor did he direct anyone to lay off, transfer, promote, or demote Plaintiff. *See* Whittington Affidavit, ¶ 4; *see also* Yacavone Affidavit, ¶¶ 7-8.

Whittington and Gardner further had no knowledge of Plaintiff or his claims of discrimination, and, therefore, could not have retaliated against him. Plaintiff's complaints were handled by the Human Resources Department and his immediate supervisors. *See* Yacavone Affidavit, ¶ 9. His complaints were not escalated by the Human Resources Department to Windstream's corporate management, which includes Whittington and Gardner. *See* Yacavone Affidavit, ¶ 9. When making the business decision to discontinue the National Accounts Division, Whittington had no knowledge of Plaintiff. *See* Whittington Affidavit, ¶ 5. He further had no knowledge that anyone in the National Accounts Division was making claims of discrimination or harassment, or that any employee in that division had a claimed disability. *See* Whittington Affidavit, ¶ 5.

Whittington only learned of the identity of Plaintiff when he was served with a Complaint in this matter. *See* Whittington Affidavit, ¶ 6. The Complaint was also the first time he learned that a former employee in the National Accounts Division was making claims of discrimination and harassment, and had a claimed disability. *See* Whittington Affidavit, ¶ 6. CEO Gardner also

had not part in the decision to lay off Plaintiff or restructure his division. *See* Whittington Affidavit, ¶ 8.

Because the undisputed facts show that Gardner and Whittington took no action to terminate or otherwise retaliate against the Plaintiff, they have no liability under the ACRA. *See* Ark. Code Ann. § 16-123-108(a). They cannot be held personally liable for retaliation under the ACRA based merely on their positions in Windstream. *See Calaway*, 2010 Ark. 432. To be liable, they must personally commit acts of retaliation. *See id*, at 4. That did not occur in this case. Summary judgment should be granted in their favor.

Likewise, Wilborne played no part in Plaintiff's termination. Wilborne served as the Senior Vice President of Sales, but his employment with Windstream ended on August 3, 2009, over three months before Plaintiff was laid off on November 18, 2009. *See* Yacavone Affidavit, ¶¶ 3, 10. Wilborne, therefore, had no part in the decision to terminate Plaintiff's employment. Because the undisputed facts show that he took no personal action to terminate or otherwise retaliate against Plaintiff, he is not liable under the ACRA. *See* Ark. Code Ann. § 16-123-108(a).

Wilborne also has no personal liability for alleged *discriminatory* acts, because liability for employment discrimination is limited to "employers" under the ACRA. *Calaway*, 2010 Ark. 432, at 3. The same holds true for discrimination claims under the ADA and Title VII. *Craig v. Wingfield*, No: 4:05CV000791 JMM, 2007 U.S. Dist. LEXIS 30699, *9 (E.D. Ark. April 25, 2007); *Morrow v. City of Jacksonville*, 941 F. Supp. 816, 820 (E.D. Ark. 1996). Summary judgment should, therefore, be granted in his favor.

## III.   CONCLUSION.

Whittington, Gardner and Wilborne were not involved in any way in Plaintiff's discharge and therefore, cannot be personally liable for retaliation. Individuals are not liable for

discrimination under any statute.  Summary judgment should be granted in their favor.

Respectfully submitted,

FRIDAY, ELDREDGE & CLARK, LLP

/s/ Dan Herrington

Daniel L. Herrington
State Bar No. 95166
400 W. Capitol, Suite 2000
Little Rock, Arkansas 72201
Telephone:     (501) 370-1571
Email:  herrington@fridayfirm.com

ATTORNEYS FOR DEFENDANTS
Windstream Communication, Inc., George Easley,
Brent Whittington, Tom Kemper, Don Wilborne,
Lori Yacavone, and Jeff Gardner

1562702.1

## CERTIFICATE OF SERVICE

I, Daniel L. Herrington, hereby certify that on March 15, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and will provide notification of such filing to the following via U.S. First Class Postage to:


Bryan R. Huffman
SPEARS, HUFFMAN & BUTLER, PLLC
113 S. Market Street
Benton, AR  72015


/s/ _____

Daniel L. Herrington

1562702.1