IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JAMES SCURLOCK                                                                                    PLAINTIFF

v.                                    NO. 4:11-CV-00369 BSM

WINDSTREAM COMMUNICATIONS, INC.;
GEORGE EASLEY; BRENT WHITTINGTON;
TOM KEMPER; DON WILBORNE;
LORI YACAVONE; and
JEFF GARDNER                                                                                      DEFENDANTS

## BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW James Scurlock, by and through his attorneys, Spears Huffman, PLLC, pursuant to Local Rule 7.2, and submits this Brief in Support of Response to Defendants' Motion for Summary Judgment, states the following:

### INTRODUCTION

Separate Defendants Whittington, Gardner, and Wilborne filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 ostensibly since they claim they had no involvement with Plaintiff's termination. At the outset, it is important to note, discovery in this case has not closed and is proceeding. Plaintiff has served upon Defendants Interrogatories pursuant to Fed. R. Civ. P. 33, Requests for Production of Documents pursuant to Fed. R. Civ. P. 34, and depositions of the Defendants have not been taken, but are currently scheduled. As more fully set forth *infra*, the Motion for Summary Judgment must be denied, or in the alternative, if the Court finds this responsive pleading insufficient, it should grant leave to amend under Fed. R. Civ. P. 56(d).

**FACTUAL BACKGROUND**

Plaintiff James M. Scurlock claims he was discriminated against at Windstream Communications, Inc. (hereinafter "Windstream") based on his Jewish ancestry and an unspecified medical disability. Plaintiff asserts claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12102, *et seq.* and the Arkansas Civil Rights Act of 1993 ("ACRA"), Ark. Code Ann. § 16-123-107. His claims against the individual Defendants George Easley, Brent Whittington, Tom Kemper, Don Wilborne, Lori Yacavone, and Jeff Gardner are limited to claims of harassment, intimidation, and retaliation under the ACRA. For the reasons more fully set forth *infra*, and applying the standard for summary judgment, Defendants are not entitled to summary judgment on Plaintiff's claims.

**LAW AND ARGUMENT**

**A.      Summary Judgment Standard**

As this is the summary judgment stage, all facts must be construed in the light most favorable to the Plaintiff, with all favorable inferences drawn. The Defendants' evidence may be considered to the extent that it "is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). Thus, courts have denied summary judgment even where a statement was uncontradicted, because it came from a witness whose interests were aligned with the moving party. *See Bazan v. Hidalgo County*, 246 F.3d 481 (5th Cir. 2001); *Abraham v. Raso*, 183 F.3d 279, 287 (3rd Cir. 1999) ("Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."); *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992) (Phillips, J., dissenting) ("[B]ecause inevitably—liability being disputed—the officer's

account will be favorable to himself, the credibility of that account is crucial."). Obviously the last clause in *Reeves* comes because establishing bias is a means of impeachment.

The 8th Circuit recently clarified the appropriate standard for motions for summary judgment:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081 (8th Cir. 2011) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

However, in light of the standard of review, "[s]ummary judgment is to be sparingly granted, especially in civil rights actions." *Howard v. Topeka-Shawnee County Metro. Planning Comm'n*, 578 F. Supp. 534, 536 (D. Kan. 1983). This is such since summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of claim or defense. *See, e.g.*, *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486 (1962). "This reflects a general perception that whether as a matter of fact any particular state of mind exists can seldom be considered to be beyond reasonable

dispute because this depends entirely upon the conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) (citing *Croley v. Matson Navigation Co.*, 434 F.2d 73, 75 (5th Cir. 1970) (importance of "demeanor" evidence); *Empire Electronics Co. v. United States*, 311 F.2d 175, 179-80 (2d Cir. 1962) (reliance on circumstantial evidence)).

B.  **Separate Defendants Were Personally Involved in Retaliating Against Plaintiff**

The Arkansas Civil Rights Act prohibits discrimination based upon race, religion, national origin or physical disability. Ark. Code Ann. § 16-123-107(a).  Further, a person whom is injured in violation of this section shall have a civil action against an employer. Ark. Code Ann. § 16-123-107(c).  Finally, individuals and employers may be liable under the ACRA for a violation if they retaliate against any individual "because such individual in good faith has opposed any act or practice made unlawful by [the ACRA] or because such individual in good faith made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ACRA]." Ark. Code Ann. § 16-123-108.

Individuals can be liable for retaliation under the ACRA. *Calaway v. Practice Mgmt. Servs.,* 2010 Ark. 432, at 3-4.  The thrust of Separate Defendants claim is that they are not liable because "they played no part in [Mr. Scurlock's] layoff from Windstream." Doc. 24 at 3.  As more fully set forth, Separate Defendants personally participated in the decision to terminate Mr. Scurlock.  Further there exists genuine issues of material fact precluding summary judgment.  Plaintiff relies upon the Affidavits attached as Exhibits to the Response to the Motion for Summary Judgment, as well as Plaintiff's Response and Counter-Statement of Disputed Facts In Support of Plaintiff's Response to Defendants Brent Whittington, Jeff Gardner, and Don Wilborne's Motion for Summary Judgment

Bennie Stanton was the Director of National Accounts at Defendant Windstream Communications, Inc. *See* Exhibit A ¶ 2.  In that position, he personally supervised Mr. Scurlock in his duties which included negotiating multi-million dollar contracts that required for their execution the signature and approval of executive officers of Defendant. *See* Exhibit A ¶ 2; Exhibit B ¶ 2, 10-12; Exhibit C ¶ 4.  On July 10, 2009, Defendant Whittington informed Mr. Stanton that he was being terminated and that Plaintiff would likely soon be fired as well based on his participation in a protected activity; namely the investigation of possible financial malfeasance by Defendant Wilborne and the investigation into the subsequent discriminatory and retaliatory actions taken by Defendant Wilborne against Plaintiff. *See* Exhibit A ¶ 3; Exhibit B ¶ 3.  Defendant Whittington was personally responsible for making the decision to terminate Mr. Stanton's employment and no other employees within Windstream National Accounts were terminated or "reorganized." *See* Exhibit A ¶ 4-5; Exhibit B ¶ 4.  Defendant Gardner is the President and CEO of Windstream. *See* Exhibit A ¶ 6.  No reorganization of any type such as that undertaken by Defendant Whittington could have been accomplished without Defendant Garnder's knowledge and approval or without the knowledge of Defendants Easley, Kemper, and Yacavone who serve under Defendant Whittington. *See* Exhibit A ¶ 6; Exhibit B ¶ 4-5.

Further, the other Separate Defendants were aware at the very least of the retaliatory actions being undertaken against Plaintiff.  In January 2009, Mr. Stanton met with Plaintiff outside of work and told him that Defendant Wilborne was openly discriminating against him and was taking retaliatory actions in an attempt to force Plaintiff to quit his job. *See* Exhibit A ¶ 9.  Defendant Yacavone contacted Mr. Stanton

concerning the investigation into Defendant Wilborne's discriminatory and retaliatory activities against Plaintiff. *See* Exhibit A ¶ 10.  Mr. Stanton related to Defendant Yacavone that it was apparent Defendant Wilborne was retaliating against Plaintiff in a discriminatory manner based on his personal characteristics including his ethnicity and such discrimination might be an outgrowth of the financial reports Plaintiff had previously provided to Windstream Marketing. *See* Exhibit A ¶ 11.  These reports appeared to be in conflict with a report created by Defendant Wilborne regarding these same accounts. *See* Exhibit A ¶ 11.  Defendant Yacavone told Mr. Stanton and Plaintiff Scurlock management was aware of Plaintiff's allegations against Defendant Wilborne and was looking into them. *See* Exhibit A ¶ 12; Exhibit B ¶ 6.  Management would have included Defendant Whittington. *See* Exhibit A ¶ 12; Exhibit B ¶ 6.  Such a notification would have been in accord with Windstream Corporate policy as Defendant Wilborne reported directly to both Defendants Gardner and Whittington in his capacity as Senior Executive Vice president of Sales. *See* Exhibit A ¶ 12; Exhibit B ¶ 6.

Many of the contracts negotiated by Plaintiff Scurlock exceeded even Defendant Wilborne's authority and were escalated to Defendants Whittington, and/or Gardner for their personal approval per company policy. *See* Exhibit A ¶ 15-16; Exhibit B ¶ 2, 10-11; Exhibit C ¶ 4.  Therefore Defendant Whittington's statement that he was unaware of Mr. Scurlock is contradicted since as a result of this policy, all were aware of both Plaintiff's position within the company as well as his responsibility to negotiate such contracts on behalf of Defendant Windstream Communications. Inc.

Defendant Whittington claims he made the decision to discontinue the National Accounts Division.  However, there was no actual reorganization of Defendant Windstream

Communication Inc.'s National Accounts Division. *See* Exhibit A ¶ 17; Exhibit B ¶ 12.  The division continued under the "Enterprise Business" umbrella at Defendant Windstream Communications, Inc. supporting the same accounts, services, contracts, and service level guarantees as were in place when Mr. Scurlock and Mr. Stantont worked there. *See* Exhibit A ¶ 17; Exhibit B ¶ 12.  Defendant Whittington was personally responsible for making the decision to term Plaintiff's termination as a "reorganization" when no other employees within Windstream National Accounts were terminated or "reorganized."  *See* Exhibit A ¶ 4-5, 17; Exhibit B ¶ 4.

Thus the only "reorganization" appears to be a "renaming" of a division at the direction of Defendant Whittington without a place for Plaintiff Scurlock.  Plaintiff's termination was in retaliation for bringing to light apparent financial malfeasance on the part of Defendant Wilborne which was an embarrassment to Defendant Windstream Communications, Inc. and the officers charged to investigate such malfeasance; namely Defendants Whittington and Gardner. *See* Exhibit A ¶ 3; Exhibit B ¶ 3, 6, 8-9.  Further, Defendant Whittington terminated Plaintiff Scurlock in retaliation for Mr. Scurlock's discovery of apparent contract fraud by David Martin – Defendant Whittington's brother-in-law.  *See* Exhibit B ¶ 9.  Thus summary judgment in favor of Defendants Whittington and Gardner is not proper as their statements of fact are directly contradicted.  Such questions of material fact, are for the finder of fact, not ripe for summary judgment.

Finally, although Defendant Wilborne was not employed with Windstream at the time of Plaintiff's termination, his retaliatory actions directly led to the reprimand of Plaintiff and the subsequent investigation into Defendant Wilborne's malfeasance. *See* Exhibit A ¶ 9.  Thus summary judgment in favor of Defendant Wilborne is improper.

C. **In the Alternative, The Court Should Issue an Order Allowing Plaintiff to Supplement this Brief in Opposition**

As noted *supra*, discovery in this action is not complete. In the event this Court deems this Response insufficient to rebut the statements of fact showing summary judgment is precluded, this Court should issue an Order allowing Plaintiff to supplement this Response within thirty days of the close of discovery. "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Plaintiff Scurlock would respectfully submit by declaration to this Court that depositions of Defendants Kemper, Wilborne, Easley, Yacavone, and Plaintiff Scurlock are scheduled to take place April 10-13, 2012. Additionally, Plaintiff has outstanding interrogatories and requests for production of documents served upon Defendants which are due on or before April 16, 2012. Additional facts and documents which may bear on this Court's decision as to Separate Defendants' Motion for Summary Judgment are likely to be discovered.

Plaintiff Scurlock moves this Court in the alternative to issue an Order pursuant to Fed. R. Civ. P. 56(d) delaying its decision on the instant Motion for Summary Judgment until 30 days after the close of discovery and allowing Plaintiff Scurlock to supplement his Response thereto.

**CONCLUSION**

Viewing all facts in the light most favorable to the Plaintiff, with all favorable inferences drawn for the benefit of Plaintiff, summary judgment is precluded. Because

there are disputed questions of material fact as to whether Defendants retaliated against Plaintiff in violation of the ACRA, summary judgment is inappropriate on the basis of the present record.  In the alternative, Plaintiff moves the Court for an Order pursuant to Fed. R. Civ. P. 56(d) to allow Plaintiff sufficient time to adequately meet "proof with proof" – demonstrating there exists a genuine issue of material fact precluding summary judgment.  Plaintiff prays that the Court deny Defendants' Motion for Summary Judgment and grant Plaintiff all other just and proper relief which the Court deems proper.

        Respectfully submitted
        JAMES SCURLOCK

By: /s/ **Bryan R. Huffman**
     Bryan R. Huffman, Ark. Bar No. 2004154
     Attorney for Plaintiff
     SPEARS HUFFMAN, PLLC
     113 S. Market Street
     Benton, AR 72015
     (501) 315-0092
     (888) 748-5786 (Facsimile)
     bhuffman@spearshuffman.com

**Certificate of Service**

     I, Bryan R. Huffman, hereby certify that on this 5th day of April, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and will provide notification of such filing to the following via U.S. First Class Postage to:

    Daniel L. Herrington
    Attorney for Defendants
    FRIDAY, ELDRIDGE & CLARK, LLP
    400 W. Capitol, Suite 2000
    Little Rock, AR 72201
    (501) 370-1571
    herrington@fridayfirm.com

        /s/ **Bryan R. Huffman**